# (December 13, 1982)

■ HERMAN D. ABRAMS et al., Respondents, v BOARD OF EDUCATION OF THE CITY OF YONKERS, Appellant, et al., Respondents. — In a proceeding pursuant to CPLR article 78 to, *inter alia,* compel payment to petitioners of suspended salary increases and recalculation of their retirement allowances by including

such amounts in the final average salary of each petitioner, the Board of Education of the City of Yonkers appeals, as limited by its brief, from so much of an order of the Supreme Court, Westchester County (Rubenfeld, J.), entered April 16, 1981, as denied its motion to dismiss the petition under CPLR 7804 (subd [f]). Leave to appeal is granted by Justice O'Connor. Order reversed insofar as appealed from, on the law, without costs or disbursements, and motion granted to the extent that the petition is dismissed as against the board of education, on the merits. The sole issue raised by appellant board of education concerns petitioners' right to bring this proceeding against it after the matter had allegedly been settled by agreement with the Yonkers Federation of Teachers, the collective bargaining agent that represented petitioners before their retirement from service.[*] The gist of petitioners' claim is that their financial interests were ignored in the settlement of deferred salary litigation because restitution was agreed to in the form of salary increases in a new union contract taking effect after they had retired. They therefore seek direct payment of the deferred amounts. The genesis of the problem was the board's withholding of salary increases, required under a 1974-1977 collective bargaining agreement, for the period of November 20, 1975 through June 30, 1977 because of legislation "suspend[ing]" such increases and excluding them from the computation of teacher pensions under the Education Law during the city's financial emergency (L 1975, ch 871 [New York State Financial Emergency Act for the City of Yonkers, § 10, subd 1] eff Nov. 14, 1975). The union responded to the withholding of salary increases by invoking the agreement's grievance procedure and seeking arbitration in July or September, 1976. Over objection of the board, Special Term directed the parties to arbitration. Although the union's demand for arbitration did not specifically address the pension aspect of the salary deferral, in this proceeding the school board contends that the "specific issue involved" before Special Term in the arbitration matter was "the right to secure the 'suspended' salary *and the effect on pensions*" (emphasis added), and Special Term's decision in that matter did, in fact, address the issue of whether the legislation impaired the teachers' pension rights in violation of the State Constitution. An appeal by the board from the order of Special Term, the demand for arbitration and other claims by the parties against one another were withdrawn with prejudice, pursuant to a stipulation of settlement dated October 1, 1977, in exchange for a new collective bargaining agreement. The stipulation described the withdrawn demand for arbitration as one "complaining of the Board's failure to pay members of the bargaining unit wage increases, increments and lane increases for the 1976-1977 school year", but it also specified that the union's counterclaim, seeking to declare the legislation unconstitutional on its face and as applied, would be withdrawn. The counterclaim apparently alleged that the teachers' pension rights were unconstitutionally impaired by the deferral legislation. The state of emergency justifying the suspension was declared ended as of June 30, 1978 and, pursuant to the legislation, the suspension was terminated on December 31, 1978. Although the board of education had performed its obligations under the settlement, it refused to satisfy petitioners' demands, as retired teachers not covered by the new contract, for direct payment of the suspended increases and recomputation of their pension bases. In bringing the instant proceeding, petitioners argued that their claims had not been released by the stipulation of settlement because it had been executed by the board of education and the union, not by them, and because the union no longer represented them once they retired. Most of the petitioners had in fact

---

\* We do not address the propriety of the form of this proceeding (see *Matter of Schwab v Bowen*, 41 NY2d 907, 908; *Yris v Comsewogue Union Free School Dist. No. 3, Port Jefferson Sta.*, 63 AD2d 648, affd 55 NY2d 840).

retired by the time the settlement was reached. In denying the appellant school board's motion to dismiss the petition, Special Term agreed with petitioners that the union had no authority to act as agent for retired teachers when it signed the stipulation and further ruled that there was an issue of fact requiring trial as to what issues were intended to be settled by the stipulation. This was error. Nothing in the record contradicts the board of education's position that the stipulation of settlement covered both the salary increase and the pension computation issues and, therefore, there is no issue of fact requiring a trial. Further, there is no legal basis for recomputation (see *Matter of Kivo v Levitt*, 67 AD2d 464, 468, affd 50 NY2d 1017). Nothing in the record shows that the union had lost its authority to act on behalf of petitioners in pursuing their rights as accrued under the collective bargaining agreement in effect at the time of their retirement. That agreement had expressly reserved to individual union members the right to proceed individually at the arbitration and postarbitration stages of the grievance process, but the petitioners never objected to the union's carrying their brief until they commenced the instant proceeding. As a matter of law, disputes covered by a collective bargaining agreement are to be resolved pursuant to the provisions of such agreement even if its term has expired or the union member has left his employment; such rights as he may have are derived from the very agreement that entrusts their enforcement to the union (see *Chupka v Lorenz-Schneider Co.*, 12 NY2d 1; *Matter of Potoker [Brooklyn Eagle]*, 2 NY2d 553; *Aloi v Board of Educ.*, 81 AD2d 874; *Berlyn v Board of Educ.*, 80 AD2d 572, affd 55 NY2d 912; *Matter of Berens [Robineau]*, 278 App Div 710). To the extent that it holds to the contrary, the case of *Forino v City of Troy* (42 AD2d 647), cited by Special Term, is not persuasive. If, as petitioners suggest, their interests were improperly overlooked by the union in reaching the settlement, then petitioners' remedy is against the union for breach of its duty to represent them in good faith (see *Parker v Borock*, 5 NY2d 156; *Berlyn v Board of Educ., supra*). Mollen, P. J., Titone, O'Connor and Thompson, JJ., concur.