OPINION OF THE COURT
Kaye, J.
 This appeal calls upon us to determine first, what Statute of Limitations should govern an action by a teacher against a public sector union for breach of its duty of fair representation and second, whether a cause of action can be stated for breach of such duty by a teacher after resigning her position. We conclude that the action was timely because brought within six years of accrual, and that where construe *317 tive discharge is the gravamen of the complaint resignation does not divest a teacher of a cause of action against the union. .
For approximately 14 years plaintiff was a mathematics teacher in the West Irondequoit Central School District (the district) and a member of the West Irondequoit Teachers Association (the union). According to her complaint, during the 1983-1984 school year, plaintiff had been allowed a full-time education leave to pursue graduate studies in computer science, which the district planned to have her teach. In March 1984, she requested an extension to continue the two-year Masters’ degree program, and was refused by the district superintendent. As an alternative, plaintiff in August requested relief from certain administrative duties so that she might continue her studies part time. After the superintendent replied that such relief might be arranged for one semester only, plaintiff resigned. Weeks later, she learned facts indicating that her requests may have been inequitably denied, including the fact that male teachers in similar circumstances had been granted leaves of absence and relief from administrative duties.
The collective bargaining agreement between the union and the district included a mandatory three-stage grievance procedure. Efforts were first to be made to resolve any grievance informally with the principal; next, a unit member was to submit the matter to the union’s grievance committee. If the committee found the grievance legitimate, it would file a written appeal with the district superintendent, who would conduct a hearing and issue a written decision. Finally, if the member and union were dissatisfied, and if the union determined the grievance to be meritorious, it could submit the matter to arbitration.
Plaintiff alleges that on October 5, 1984, she delivered a letter to the school, with a copy to the union, outlining her grievance under the collective bargaining agreement. Five days later, the union notified her that it would not represent her and that she would have to pursue the matter on her own. One reason advanced was that, since plaintiff had already resigned, the union could not represent her in any grievance matters. Plaintiff’s grievance was subsequently denied by the principal. Thereafter, the district superintendent denied a request that her resignation be set aside and that she be granted an extension of her education leave. The superinten *318 dent stated that he met with plaintiff as a courtesy but that the formal grievance procedure provided for in the collective bargaining agreement was not available to her because she was no longer an employee. Plaintiff’s subsequent request for arbitration was denied by the district, which asserted that she could not use the grievance procedure without the union. Plaintiff then asked that the union reconsider submitting her grievance to arbitration; in February 1985 the union refused.
In July 1985, some 10 months after her resignation, plaintiff commenced the present action for reinstatement and other relief, alleging that the district had treated her inequitably based on her gender, in violation of the collective bargaining agreement as well as State and Federal laws, and that she had in effect been forced to resign, or had been constructively discharged. That matter is not now before us. She also asserted a cause of action against the union for breach of its duty of fair representation, claiming that the union’s refusal to pursue the grievance on her behalf was arbitrary, capricious and in bad faith as it had not investigated her claims, had not contacted any witness concerning the circumstances of her case, and had never even contacted her for any information. The complaint further charged that the union’s refusal to reconsider its decision was similarly arbitrary, capricious and in bad faith because the union had failed to consult her or her attorney and did not consult its own attorney regarding the merits of her grievance and her right to union representation. That is the matter now before us.
The union sought dismissal of the fair representation cause of action on three grounds: first, that it was untimely, having been commenced more than six months after accrual; second, that the complaint did not state a cause of action in that, upon her resignation, plaintiff ceased to be a member of the bargaining unit entitled to representation; and third, that plaintiff failed to exhaust contractual and internal union remedies. Special Term denied the motion but the Appellate Division reversed, concluding that the applicable limitations period for a cause of action for breach of a duty of fair representation by a public sector union is the Federal six-month period for filing an unfair labor practice against a private employer (DelCostello v Teamsters, 462 US 151), and that any duty to represent plaintiff ceased when she resigned (123 AD2d 500). The court did not address the alleged failure to exhaust remedies.
*319 We now reverse and deny the union’s motion to dismiss the complaint as against it.
Statute of Limitations
The rights and obligations of public sector employees and unions are governed by article 14 of the Civil Service Law, known as the Taylor Law (Civil Service Law § 200 et seq.). Neither the Taylor Law nor the CPLR prescribes a Statute of Limitations applicable to actions for a union’s breach of duty of fair representation. This appeal requires us to identify the period.
In DelCostello, the Supreme Court held that the six-month Statute of Limitations for bringing unfair labor practice charges before the National Labor Relations Board, contained in section 10 (b) of the National Labor Relations Act (the NLRA) (29 USC § 160 [b]), governs suits by private employees against unions for breach of the duty of fair representation and against private employers for breach of collective bargaining agreements. The union argues that DelCostello compels us to apply the same limitations period to fair representation actions by public employees. In the alternative, the union urges that we apply the 90-day period provided in CPLR 7511 (a) for proceedings to vacate arbitration awards or the four-month limitations period established by the Public Employment Relations Board (PERB) for bringing unfair labor practice charges before PERB (see, Civil Service Law § 205 [5] [d]; § 209-a; 4 NYCRR 204.1 [a] [1]).
We conclude that the Federal statute applied in DelCostello cannot govern this action under State law, and that— until the Legislature acts to impose a limitations period — the six-year statute (CPLR 213 [1]) must be applied.
The duty of fair representation may be traced to Federal law, where it arose as an implied cause of action under the scheme of the NLRA (DelCostello v Teamsters, 462 US, at 164, supra; Matter of Civil Serv. Bar Assn. v City of New York, 64 NY2d 188, 195-196). In determining the Statute of Limitations for such claims, the Supreme Court faced a familiar problem in Federal civil law: the law provided no Statute of Limitations for this cause of action, so the court had to borrow one elsewhere. While the court might ordinarily have selected the most closely analogous Statute of Limitations under State law, in DelCostello it determined that available State provisions were unsatisfactory and that implementation of Federal policy *320 required application of a rule drawn from Federal law (462 US, at 166-169, supra). The court chose the limitations period set forth in the NLRA for making unfair practice charges to the National Labor Relations Board, reasoning that it had been designed with an eye to balancing the same Federal interests that were at issue in fair representation cases (462 US, at 169, supra).
Our determination must have a different focus because the fair representation cause of action against public sector unions has a different source. The State and its political subdivisions are explicitly excluded from the definition of employer contained in the NLRA (29 USC § 152 [2]); that statute does not govern public sector unions or their members. Instead, the relationship among public employers, public employees and public employee organizations in New York State is governed by New York State’s Taylor Law. In applying the section of the statute regarding improper employer and union practices, the Taylor Law provides that the "fundamental distinctions between private and public employment shall be recognized, and no body of federal or state law applicable wholly or in part to private employment, shall be regarded as binding or controlling precedent.” (Civil Service Law § 209-a [3]; see also, Matter of West Irondequoit Teachers Assn. v Helsby, 35 NY2d 46, 50.) The Taylor Law establishes the scheme by which certified unions are recognized as the exclusive bargaining agents for their members (Civil Service Law § 204). This statutory role is the basis for the implied cause of action in favor of public employees against their unions for breach of the duty to represent all members fairly (Matter of Civil Serv. Bar Assn. v City of New York, 64 NY2d 188, 196, supra).
When DelCostello is applied to actions by private employees against their employers or unions for violations of obligations established under the NLRA, this is a simple matter of applying Federal limitations periods to Federal causes of action. But in article 2 of the CPLR the State Legislature has established time limitations for causes of action arising under State law, including even a catch-all provision to be applied when no other period has been specifically prescribed by law (CPLR 213 [1]). "The Statute of Limitations has been changed from time to time in New York in response to current needs and expectations in society and has been peculiarly a subject of legislative solicitude.” (Cubito v Kreisberg, 69 AD2d 738, 746, affd for reasons stated in opn of Hopkins, J., 51 NY2d 900; see also, 1 Weinstein-Korn-Miller, NY Civ Prac fl 201.01 *321 ["Statutes of limitation are essentially creatures of the legislative rather than of the judicial process.”].) We therefore must look to the limitations periods prescribed by the Legislature and select the one that best fits the character of an action for breach of the duty of fair representation under State law.
The options proposed by the union — the 90-day limit for a proceeding to vacate an arbitration award (CPLR 7511 [a]) and the four-month period established by PERB for filing unfair practices claims (4 NYCRR 204.1 [a] [1]) — are not suitable. In an action to vacate an arbitration award, the grievance has already "run its full course, culminating in a formal award by a neutral arbitrator” (DelCostello v Teamsters, 462 US, at 166, n 16, supra); this is scarcely parallel to an action for arbitrary refusal to take a grievance to arbitration in the first instance, where it is necessary to make investigation, evaluate responses, retain counsel and frame a complaint (id.). Unlike the statutory six-month period chosen by the Supreme Court in DelCostello, the four-month period found in the PERB regulation is of course not a period that has been fixed by the State Legislature for the preclusion of court actions. When a four-month limitation has been prescribed by statute for particular proceedings — as in CPLR 217 — it has been upon the Legislature’s determination that there are strong policy considerations supporting such a truncated period, vital for the conduct of certain kinds of governmental affairs (Solnick v Whalen, 49 NY2d 224, 232).
Plaintiff urges that the closest analogy to an action for breach of the duty of fair representation is a claim for legal malpractice, since both challenge the adequacy of representation in circumstances requiring specialized knowledge and advocacy skills. Based on Video Corp. v Flatto Assocs. (58 NY2d 1026) and Sears, Roebuck & Co. v Enco Assocs. (43 NY2d 389), plaintiff would then have us apply the six-year Statute of Limitations for contract actions (CPLR 213 [2]), instead of the three-year statute for malpractice actions (CPLR 214 [6]), reasoning that ultimately the rights and obligations as established by the collective bargaining agreement between the union (as exclusive representative of the employees) and the district are at the root of the issues raised against the union in this action. In our view, this analogy also is flawed (see, United Parcel Serv. v Mitchell, 451 US 56; see also, DelCostello v Teamsters, 462 US, at 165, supra), but we are nonetheless led to the result urged by plaintiff — a six-year limitations period — because this is the period the Legislature *322 has prescribed for "an action for which no limitation is specifically prescribed by law”. (CPLR 213 [1].)
We recognize that application of the six-year period results in great disparity between similar claims of public and private employees, and also that it runs counter to other policy considerations. It is obviously desirable that labor disputes be resolved expeditiously. As has been noted in the private union context, the grievance and arbitration procedure often involves interpretation of the collective bargaining agreement and fundamentally affects the relationship between the employer and the union; the system can become unworkable if these interpretations may be called into question years later (see, DelCostello v Teamsters, 462 US, at 169, supra; United Parcel Serv. v Mitchell, 451 US 56, 63-64, supra). Whether or not identical considerations prevail in a member’s fair representation claims against a public sector union, there is surely an equivalent interest in the prompt disposition of grievances. In deciding the case before us, we invite the Legislature to address the issue and fix a more suitable Statute of Limitations — one that balances the private interest of employees in prosecuting their grievances and the public interest in the expeditious resolution of public sector labor disputes.[1]
Duty of Fair Representation
While various contentions are advanced regarding the scope of the duty of fair representation, only a narrow facet of this issue is before us. In its dismissal motion the union did not challenge the complaint on the basis that the conduct alleged fails to state a cause of action for breach of the duty of fair representation, and we do not reach that issue.[2] The union by its motion contested only its continuing duty to represent plaintiff after her resignation. As the court below concluded: *323 "there is no duty to represent someone who is not a member of a union * * * Since plaintiff ceased to be a regular employee when she resigned effective September 4, 1984, the Union had no duty to represent her with respect to her grievance filed a month after her resignation, (see, Smith v Sipe, 67 NY2d 928).” (123 AD2d 500, 501-502, supra.) We disagree.
Initially, it is plain both that the union’s duty extends beyond actual union members — the collective bargaining agreement itself speaks of "unit members” as those regularly employed by the district (see also, Civil Service Law § 203)— and that Smith v Sipe (67 NY2d 928, supra) did not address the status issue that now confronts us. While the dissent of Presiding Justice Mahoney, adopted by this court, indeed speaks of a union’s duty to fairly represent its "members” (109 AD2d 1034, 1036), the issue in that case was whether mere acts of negligence might constitute a breach of the duty of fair representation; the person to whom such a duty runs was not considered.
An employer cannot extinguish an employee’s rights under a collective bargaining agreement by simply terminating the employment; nor would a wrongful discharge — which is premised on a breach of agreement occurring during employment, while the individual was a member of the bargaining unit— automatically sever the union’s duty of fair representation arising from its role as exclusive bargaining agent. A cause of action can be and commonly is, brought after termination, premised on breach of the collective bargaining agreement or breach of the duty of fair representation during employment. (See, e.g., DelCostello v Teamsters, 462 US 151, supra; Vaca v Sipes, 386 US 171; Gosper v Fancher, 49 AD2d 674, affd 40 NY2d 867, cert denied 430 US 915; Ferri v Public Employees Fedn., 92 AD2d 1054; Jackson v Regional Tr. Serv., 54 AD2d 305.) The fact that employment has terminated, in such instances, cannot absolve the labor organization of its responsibilities under the collective bargaining agreement and the law.
While plaintiff indeed filed her alleged grievance only after she had resigned, she was nonetheless a regular employee and thus a member of the bargaining unit at the time her grievance arose, and she has charged that breach of the collective bargaining agreement forced her resignation and amounted to a constructive discharge. Viewing plaintiff’s as *324 sertions in her favor as we must on this dismissal motion, and without reaching the question whether there is any merit in plaintiff’s claim, it appears that plaintiff’s status is not materially different from that of an employee who claims he or she was actually fired in violation of the collective bargaining agreement. As in the case of a wrongful discharge, plaintiff’s status as a former employee here does not divest her of the right to maintain an action for breach of the duty of fair representation during her employment.
The third ground of the dismissal motion — that the action against the union must be dismissed because plaintiff failed to exhaust contractual and union remedies — is fully answered by the record of plaintiff’s efforts to present her claim in accordance with the three-stage grievance procedure provided in the collective bargaining agreement. In light of this record, the allegation of the complaint that she merely "attempted to” file a grievance cannot be regarded as a fatal deficiency (see, Credit Alliance Corp. v Andersen & Co., 65 NY2d 536, 541, n 1; Rovello v Orofino Realty Co., 40 NY2d 633).
Accordingly, the Appellate Division order should be reversed, with costs, and the motion of defendant West Irondequoit Teachers Association to dismiss the complaint as against it denied.
Chief Judge Wachtler and Judges Simons, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
Order reversed, etc.

. As the union points out in its brief, resolution of the issue as to the union could also determine the applicable limitations period as against the employer. Additionally, in light of our holding, we need not determine when plaintiiFs cause of action accrued — whether upon exhaustion of the grievance procedures or upon the union’s first notification that it would proceed no further on her behalf. If the Legislature were to fix the appropriate Statute of Limitations, it might further choose to settle the interrelated issue of accrual date (see, e.g., CPLR 217).

. We therefore do not consider the contention first raised on this appeal that the union’s rejection of plaintiiFs grievance is at most a mere mistake in contract interpretation, which does not rise to the level of violation of the duty of fair representation (see, Smith v Sipe, 67 NY2d 928).