*505
 
 OPINION OF THE COURT
 

 Kaye, J.
 

 A teacher alleging breach of a provision of the collective bargaining agreement between the school district and the union, having exhausted the grievance process established by the agreement and claiming no breach of the union’s duty of fair representation, cannot then petition the Commissioner of Education under Education Law § 310 for relief on that same grievance. The Commissioner’s determination sustaining the teacher’s appeal in these circumstances is affected by an error of law and must be annulled.
 

 Joseph Margolin, a pre-1975 tenured secondary level social studies teacher, has been employed by the Board of Education of Commack Union Free School District (the district) for the past 19 years. Margolin is a member of the Commack Teachers Association (the union), the collective bargaining agent for all teachers employed by the district.
 

 The collective bargaining agreement between the union and the district covering the 1984-1985 school year provided that district administrative personnel had the right and responsibility to make "wise and judicious use” of the teaching staff, that student welfare and efficient use of staff were among the factors to be considered in making assignments, and that "[a]ll other factors being equal, seniority shall prevail with respect to class assignments and duties” (§ 18.01 [k]). Because the district had a surplus of certified social studies teachers but lacked English and mathematics teachers, it assigned some social studies teachers to those other subjects. Margolin was involuntarily assigned to one course outside the social studies department during the 1983-1984 school year and another— "Writing and Reading” — for the 1984-1985 year.
 

 Margolin accepted the assignment without complaint, but when the 1984-1985 school term commenced he learned that, owing to a late-August resignation, a social studies teacher who had previously taught psychology but had less seniority than he had been assigned to teach two psychology courses. Because psychology was considered a social studies class, that assignment gave the other teacher only courses within the social studies department. Margolin believed that, under the collective bargaining agreement, another teacher with less seniority should have been assigned to teach "Writing and Reading” and that he should have been assigned only courses within his department. Arguing that the district had breached
 
 *506
 
 the agreement by making these assignments, Margolin then began a grievance proceeding under the collective bargaining agreement.
 

 The collective bargaining agreement established a four-stage grievance procedure, the first three stages of which could be pursued by the union or any employee individually. The fourth stage, binding arbitration before the Public Employment Relations Board (PERB) could be initiated by the district or by the union, but not by the aggrieved employee. Margolin first presented his grievance to his union representative who, after investigation, informed him that the union had concluded that his grievance lacked merit. The letter noted that the union would nonetheless help Margolin protect his rights under article XXXII ("Grievance and Arbitration Procedures”) and directed his attention particularly to the provision entitling a grievant to be represented by the person of his choice at all available stages of the grievance procedure. Margolin appealed this determination to the union’s executive board. The union president advised him that further investigation reinforced the conclusion that the grievance was without merit. The president noted that "all other factors” were not equal so that, under section 18.01 (k) of the agreement, seniority alone was not dispositive.
 

 Margolin also pursued this grievance independently. His immediate supervisor denied the grievance, noting that the assignment was part of an effort to make "wise and judicious” use of the entire department staff and to "rotate assignments on an equitable and fair basis.” Margolin next presented the grievance to his principal, who also denied it. The principal stated that assignments had been based on criteria required by the contract — student welfare and efficient staff utilization —so that "all other factors” were not equal and seniority alone should not have been determinative of the assignment. Margolin next invoked the third, "formal” stage of the contract’s grievance procedure by requesting a hearing before the Superintendent of Schools or his designee. In that letter Margolin alleged that at least five teachers with less seniority were teaching entirely within the social studies area. The Hearing Officer, after a hearing, issued a decision denying the grievance, concluding (after a full recital) that the relevant factors other than seniority supported Margolin’s assignment to the "Writing and Reading” class and there was no violation of the agreement as alleged. The assignment also was found to be consistent with a long-standing practice of assigning non
 
 *507
 
 social studies classes to the entire social studies department on a rotating basis without regard to seniority.
 

 Having failed to obtain relief within the grievance process provided by the collective bargaining agreement, Margolin filed a petition of appeal with the Commissioner of Education complaining of the very same grievance — that his assignment violated section 18.01 (k) of the collective bargaining agreement.
 
 [1]
 
 The appeal was lodged pursuant to Education Law § 310, which provides:
 

 "Any party conceiving himself aggrieved may appeal by petition to the commissioner of education who is hereby authorized and required to examine and decide the same * * * The petition may be made in consequence of any action:
 

 * * *
 

 "7. By any other official act or decision of any officer, school authorities, or meetings concerning any other matter under this chapter, or any other act pertaining to common schools.” Among the defenses pleaded by the district were that the petition was legally insufficient in that it did not allege that the union had breached its duty of fair representation and that the union, a necessary party, had not been joined.
 

 The Commissioner sustained Margolin’s appeal, reasoning that absence of the union was irrelevant because it is not within his jurisdiction and he thus could not be concerned with the adequacy of the union’s representation. Because Margolin had exhausted his remedies under the contract, albeit without reaching binding arbitration, the Commissioner concluded that administrative review was available. On the merits he determined that the district had failed to state what "other factors” were controlling in the assignment of junior teachers to social studies assignments, and found that the district had failed to consider Margolin’s seniority adequately. The Commissioner directed that future assignments be made in accordance with the contract, taking into consideration the improper assignment for the 1984-1985 school year.
 

 The district then brought this article 78 proceeding to annul the Commissioner’s determination. Special Term dismissed the
 
 *508
 
 petition, finding that the Commissioner’s decision was not arbitrary, capricious or in violation of law, and the Appellate Division affirmed, two Justices dissenting. We now reverse and annul the Commissioner’s determination.
 

 The district acknowledges that, had Margolin in the first instance made a timely appeal to the Commissioner challenging his assignment on the ground that it contravened the Education Law and the Commissioner’s regulations governing incidental teaching assignments, without question the Commissioner could have determined that appeal on its merits. That issue is not before us. The question before us is whether the same result should obtain when the petition is based on a provision of a collective bargaining agreement relating to seniority, rather than one cast as a matter of education law or policy, and when the employee has first prosecuted that same issue through the grievance process provided by the collective bargaining agreement. We answer that question in the negative.
 

 As a general proposition, when an employer and a union enter into a collective bargaining agreement that creates a grievance procedure, an employee subject to the agreement may not sue the employer directly for breach of that agreement but must proceed, through the union, in accordance with the contract. Unless the contract provides otherwise, only when the union fails in its duty of fair representation can the employee go beyond the agreed procedure and litigate a contract issue directly against the employer
 
 (see, Berlyn v Board of Educ.,
 
 55 NY2d 912,
 
 affg on mem. at
 
 80 AD2d 572;
 
 Chupka v Lorenz-Schneider Co.,
 
 12 NY2d 1,
 
 appeal dismissed
 
 372 US 227;
 
 Menkes v City of New York,
 
 91 AD2d 654,
 
 lv dismissed
 
 59 NY2d 762,
 
 cert denied
 
 464 US 858; see
 
 also, Baker v Board of Educ.,
 
 70 NY2d 314). These principles, borrowed by State law from private sector law under the Labor Management Relations Act (29 USC § 151
 
 et seq.),
 
 are also apt where the issue is not resort to the courts but an effort to pursue a contractual grievance in a statutory appeal under Education Law § 310, particularly where the employee has actually pursued his contract grievance through the stipulated procedures.
 

 While the Commissioner viewed Margolin’s tireless pursuit of his contract remedies as entitling him to an appeal under Education Law § 310, these facts propel us to the opposite conclusion. Exhaustion of contract remedies in this situation
 
 *509
 
 is not a gateway to review by the Commissioner of the very same grievance under a collective bargaining agreement but an election of consequence. As cogently expressed in the Appellate Division dissent of Justice Levine, permitting an employee to invoke Education Law § 310 "to upset the final resolution of a grieved dispute, inviting the Commissioner to act, in effect, as a super arbitrator, would destroy the finality of grievance/arbitration determinations in the public employment sector necessary to effectuate * * * State policy.” (121 AD2d 136, 142.)
 

 Several policy grounds underlie restricting Margolin to his chosen contractual remedies here and denying appeal of this particular grievance to the Commissioner. Grievance procedures have been recognized as serving the interests of all parties involved in collective bargaining. They enable the union to participate in administering the contract it negotiated; they aid the employer by channeling grievances into one forum providing one set of remedies; and they permit efficient protection of employee rights
 
 (Republic Steel v Maddox,
 
 379 US 650, 653). They are Congress’ "preferred method for settling disputes and stabilizing the 'common law’ of the plant.”
 
 (Id.)
 
 Allowing individual employees to circumvent the grievance procedure in favor of other remedies as a general matter would impair those interests, deprive the parties of the opportunity to "establish a uniform and exclusive method for orderly settlement of employee grievances”, and " 'inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements.’ ”
 
 (Id.,
 
 quoting
 
 Teamsters Local v Lucas Flour Co.,
 
 369 US 95, 103.) Moreover, disrupting the contract’s settlement procedures in this fashion has been viewed as threatening the union’s authority as representative and weakening the individual employee’s protection
 
 (Vaca v Sipes,
 
 386 US 171, 191;
 
 see also, Parker v Borock,
 
 5 NY2d 156, 162 [Fuld, J., concurring]; Cox,
 
 Rights Under a Labor Agreement,
 
 69 Harv L Rev 601, 625-627). Only when a union has failed to represent an employee fairly— effectively depriving the employee of full use of the agreed procedures — does concern for employees’ rights require that they be allowed to pursue grievances beyond the contractual mechanism
 
 (Berlyn v Board of Educ.,
 
 55 NY2d 912,
 
 supra; Vaca v Sipes,
 
 386 US 171,
 
 supra).
 

 The New York State Legislature has recognized the strong policy favoring internal grievance mechanisms and the finality of the grievance process in public collective bargaining
 
 *510
 
 agreements. It is the policy of this State "to promote harmonious and cooperative relationships between government and its employees and to protect the public by assuring, at all times, the orderly and uninterrupted operations and functions of government.” (Civil Service Law § 200.) This policy is "best effectuated” by "encouraging such public employers and such employee organizations to agree upon procedures for resolving disputes”. (Civil Service Law § 200 [c].) The Taylor Law further grants to public employees the right to be represented by unions to negotiate the terms and conditions of their employment "and the administration of grievances arising thereunder.” (Civil Service Law § 203.) The employer’s duty to negotiate collectively includes a duty to negotiate "an agreement, or any question arising thereunder”. (Civil Service Law § 204 [3].) Permitting employees to prosecute alleged violations of the agreement beyond the contractual grievance procedure obviously unsettles the finality of grievance determinations that is central to implementation of State policy, and the right to bring such proceedings is therefore restricted.
 

 We turn next to the relation of these principles to the broad powers granted to the Commissioner under the Education Law.
 

 The Commissioner of Education and the Board of Regents are vested with power to manage educational affairs and establish and enforce education policy (NY Const, art V, § 4; art XI, § 2; Education Law §§ 207, 305). The Commissioner is charged with the general supervision of boards of education of union free school districts and their management and conduct of all departments of instruction (Education Law § 309); "[a]ny person conceiving himself aggrieved may appeal or petition” to him (Education Law § 310). This broad review power exists so as " 'to make all matters pertaining to the general school system of the state within the authority and control of the department of education and to remove the same so far as practicable and possible from controversies in the courts.’ ”
 
 (Donohue v Copiague Union Free School Dist.,
 
 47 NY2d 440, 444, quoting
 
 Bullock v Cooley,
 
 225 NY 566, 576-577;
 
 Matter of Vetere v Allen,
 
 15 NY2d 259, 266,
 
 cert denied
 
 382 US 825.)
 

 Education Law § 310 itself specifies a number of areas in which the Commissioner may hear appeals, including structure of school districts and payment of money to them, payment to teachers, admission of students, use of school libraries and other matters arising from official acts of school authori
 
 *511
 
 ties. We have recognized the broad authority of the Commissioner in such matters as the issue of "educational malpractice”
 
 (Donohue v Copiague Union Free School Dist.,
 
 47 NY2d 440,
 
 supra),
 
 the establishment of standards for granting high school diplomas
 
 (Matter of Board of Educ. v Ambach,
 
 60 NY2d 758,
 
 affg
 
 90 AD2d 227,
 
 cert denied
 
 465 US 1101), the determination of appropriate hours of instruction
 
 (Matter of New York City School Bds. Assn. v Board of Educ.,
 
 39 NY2d 111), racial balance in schools
 
 (Matter of Vetere v Allen,
 
 15 NY2d 259,
 
 supra),
 
 and dissolution and consolidation of school districts
 
 (Bullock v Cooley,
 
 225 NY 566,
 
 supra).
 
 The district suggests, as a further example, a teacher’s challenge under the Education Law on the ground that assignments fall outside certification and competency.
 

 The Commissioner’s broad review powers are not, however, unlimited. It is plain from the petition of appeal that what Margolin placed before the Commissioner was cast as the identical contract issue he had previously elected to submit under the grievance procedure provided by the collective bargaining agreement. In these circumstances, recognizing the right of review by the Commissioner would serve neither the Education Law objective of providing a quick, simple method of resolving policy questions that recur in school administration nor the Civil Service Law objective underlying collective bargaining in public sector employment.
 

 Both the Commissioner and the Appellate Division majority found material the fact that only the district and the union— not Margolin himself — could take the grievance to binding arbitration. We disagree. When Margolin elected to follow the contract grievance procedure, he did so knowing that his union would control the decision whether to reach arbitration. He left that authority with them. Without a showing that the union breached its duty of fair representation in prosecuting the employee’s grievance, its decision to conclude the grievance process short of the final step allowed by contract or law is binding on the employee and precludes resort to additional remedies
 
 (see, Matter of Civil Serv. Bar Assn. v City of New York,
 
 64 NY2d 188;
 
 Abrams v Board of Educ.,
 
 91 AD2d 618).
 

 Our conclusion is consistent with
 
 Board of Educ. v Associated Teachers
 
 (30 NY2d 122), where we recognized that, although the Legislature had given a tenured teacher a choice of two methods of statutory appeal to challenge an adverse decision of the school board, the board could agree that the
 
 *512
 
 teacher might choose arbitration as a third method of reviewing its determination (30 NY2d, at 131,
 
 supra).
 
 As we held there, however, a final decision by any one spells the end of the matter (30 NY2d, at 132,
 
 supra; see also, Matter of Dye v New York City Tr. Auth.,
 
 88 AD2d 899,
 
 affd
 
 57 NY2d 917;
 
 Matter of Kavoukian v Bethlehem Cent. School Dist.,
 
 63 AD2d 767). By the same token, Margolin’s grievance terminated when he exhausted internal procedures and, in seeking further appeal of the very same contract matter, made no showing of breach of the union’s duty of fair representation that might permit him to go beyond the stipulated grievance mechanism.
 
 [2]
 

 Accordingly, the Appellate Division order should be reversed, with costs, and the determination of the Commissioner of Education annulled.
 

 Chief Judge Wachtler and Judges Simons, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
 

 Order reversed, etc.
 

 [1]
 

 . While Margolin’s brief in this court now characterizes his complaint as one for out-of-certification assignment
 
 (see,
 
 Education Law §§ 3001, 3009 (1); § 3010; 8 NYCRR 80.2 [c]), the petition itself describes only the alleged violation of section 18.01 (k) of the agreement.
 

 [2]
 

 . Margolin’s contention that the article 78 petition is premature, because the district failed to seek reopening of the Commissioner’s decision (8 NYCRR former 276.7 [now 276.8]), is without merit. The Commissioner’s decision was final and binding
 
 (contrast, Matter of Martin v Ambach,
 
 57 NY2d 1001), and thus subject to challenge by an article 78 proceeding
 
 (see, Matter of De Milio v Borghard,
 
 55 NY2d 216).