■ In the Matter of GARY MOSES, Appellant, v RENSSELAER COUNTY et al., Respondents. [690 NYS2d 769] —Peters, J. Appeal

from a judgment of the Supreme Court (Ceresia, Jr., J.), entered March 19, 1998 in Rensselaer County, which, in a proceeding pursuant to CPLR article 78, granted respondents' motion to dismiss the petition for failure to exhaust administrative remedies.

Petitioner, employed as a communications officer with respondent Rensselaer County Sheriff's Department for approximately 22 years, took a leave of absence in June 1996 attributed to the stress involved with his position as a dispatcher for emergency services. In August 1996, he was admitted to the Southwestern Vermont Medical Center for depression and possible posttraumatic stress disorder. On August 26, 1996, his physician, James Carroll, reported that he was able to return to work with no restrictions commencing September 9, 1996. However, respondent Rensselaer County requested that petitioner be examined by its consultant, Steven Rappaport, board-certified in psychiatry and neurology, for a determination of his fitness to return to duty. Upon such examination, Rappaport opined that although petitioner should continue with his course of therapy, he was competent to return to work on a part-time basis, gradually returning to full-time employment. At the County's request and without reexamining petitioner, Rappaport revised his opinion after reviewing petitioner's job description and determined that he was not fit to return to duty.

On October 22, 1996, Kate Luscombe, labor relations specialist for petitioner's bargaining unit, the Civil Service Employees Association (hereinafter CSEA), with which the County had a collective bargaining agreement, wrote to Susan Martin, the County's Director of Personnel, and advised that since the County had not yet provided notice to petitioner regarding his employment status, he should be returned to work immediately. Martin disagreed and advised petitioner, by letter dated October 24, 1996, that based upon the revised report of Rappaport, the County was not authorizing his return but would make available other employment opportunities. Petitioner rejected the offer and demanded to return to his former position as a dispatcher for emergency services.

On January 15, 1997, Thomas Hendry, Associate Personnel Technician for the County's Bureau of Personnel, requested that the State Civil Service Commission appoint a medical officer for the purpose of determining, pursuant to Civil Service Law § 72, whether petitioner was mentally fit to perform his duties. The Municipal Service Division thereafter advised Hendry, by letter dated January 30, 1997, that Civil Service Law

§ 72 required that either the municipal civil service commission or personnel officer make the selection. If, however, neither one exists or the appointment is not made within 60 days, the Civil Service Commission could make the appointment. Martin had left her position as County Director of Personnel by that time and as of March 18, 1997, the County Legislature had not yet confirmed the appointment of a new personnel officer.

On April 22, 1997, Christina Mahoney was appointed County Director of Personnel. On that same date, CSEA formally demanded, *inter alia*, a medical examination in accordance with Civil Service Law § 72 and that petitioner be provided with "all rights and benefits" afforded therein, prompting an independent medical examination of petitioner by John Wapner. By letter dated June 9, 1997, petitioner was advised that although Wapner's examination did not conclude that petitioner was unable to perform his duties, there was no indication that if petitioner did return to work, he would be successful. Wapner advised that for petitioner to return, he needed to provide a letter from his therapist, Paul Dolmetsch. By letter dated August 1, 1997, Dolmetsch reported that petitioner's depression was in remission and that there was no reason why petitioner could not return to work. Notwithstanding such recommendation, petitioner has not been allowed to return to work since the date of his original clearance, to wit, September 9, 1996.

This CPLR article 78 proceeding was commenced on September 3, 1997 contending that respondents had involuntarily placed petitioner on leave as of September 9, 1996. Respondents successfully moved to dismiss the petition by alleging a failure to exhaust administrative remedies. Petitioner appeals.

Generally, when "an employer and a union enter into a collective bargaining agreement that creates a grievance procedure, an employee subject to the agreement may not sue the employer directly for breach of that agreement but must proceed, through the union, in accordance with the contract" (*Matter of Board of Educ. v Ambach*, 70 NY2d 501, 508, *cert denied sub nom. Margolin v Board of Educ.*, 485 US 1034). A union on behalf of its employee thereby becomes bound to exhaust all available administrative remedies before proceeding to litigate in a court of law (*see, Watergate II Apts. v Buffalo Sewer Auth.*, 46 NY2d 52).

In so determining the parameters of the collective bargaining agreement and the types of complaints required to be grieved pursuant thereto, the provisions of such agreement

will govern. Here, the subject agreement defines a grievance as a "violation, misinterpretation or inequitable application of this [a]greement, administrative orders, regulations, procedures, or work rules". Although its provisions directly address the procedure whereby an employee could take leave without pay, nothing therein addresses the circumstances under which an employee could be placed on an involuntary medical leave and the procedures he would have to initiate to seek reinstatement or review. Unlike *Matter of Dombroski v Bloom* (170 AD2d 805), where the collective bargaining agreement left the employee with alternative options of pursuing his statutory rights under the Civil Service Law or utilizing the contract's grievance mechanism, petitioner here was bound to follow the grievance mechanism outlined in the collective bargaining agreement had it been provided. Since petitioner is not asserting that the failure to reinstate him violated the terms of such agreement or that there exists a dispute regarding the meaning of any of its provisions, the dispute does not fall within the agreement's definition of a "grievance". In finding that the collective bargaining agreement could not be found to supplant the procedural safeguards outlined in the Civil Service Law (*compare, Grandi v New York City Tr. Auth.*, 977 F Supp 590, *affd* 175 F3d 1007) and that the provisions of this agreement are inapplicable to this dispute, we conclude that an administrative appeal thereunder would have been futile (*see, Watergate II Apts. v Buffalo Sewer Auth., supra*, at 57; *Matter of Miller v State of New York Dept. of Health*, 222 AD2d 821, 822).

Notably, plaintiff has a vested property right in his position and cannot be placed on involuntary medical leave without first being provided the procedural safeguards embodied in Civil Service Law § 72 (*cf., Grandi v New York City Tr. Auth., supra*, at 595; *Roach v City of New York*, 782 F Supp 261; *Laurido v Simon*, 489 F Supp 1169; *Snead v Department of Social Servs.*, 389 F Supp 935, *vacated on other grounds* 425 US 457). CSEA's April 22, 1997 letter to the County indicated that legal action would be taken on petitioner's behalf if it failed to comply with the provisions of Civil Service Law § 72 by May 9, 1997. When the County failed to act by such date, it triggered, in our view, the commencement of the Statute of Limitations (*see,* CPLR 217). Since petitioner filed his petition on September 3, 1997, this proceeding challenging placement of petitioner on involuntary leave without the protections accorded by Civil Service Law § 72 is timely (*cf., Matter of Vickery v Sinnott*, 235 AD2d 818, *lv denied* 89 NY2d 814).

Mikoll, J. P., Crew III, Yesawich Jr. and Carpinello, JJ.,

concur. Ordered that the judgment is reversed, on the law, without costs, motion denied and matter remitted to the Supreme Court where respondents will be permitted to serve an answer within 20 days of the date of this Court's decision.