OPINION OF THE COURT
John B. Nesbitt, J.
Must a retiree claiming that his former municipal employer *248 violated his right to postemployment health insurance benefits vested under an expired collective bargaining agreement seek relief through the grievance arbitration procedure contained in that agreement? The appellate courts of this state have not spoken on this issue. Under the facts of this case, given the broad arbitration clause contained in the governing agreement, this court holds that grievance arbitration is the exclusive means of redress, and that a retiree cannot bring suit against his former employer without alleging and ultimately proving that the union contractually responsible for grievance administration breached its duty of fair representation owed to the retiree.
The facts, for purposes of this motion, are uncomplicated and undisputed. Plaintiff was hired by the defendant Town in 1962 and retired in 1991. At the time of plaintiffs retirement, the terms of his employment were governed by a collective bargaining agreement between the Town and the Civil Service Employees Association, Local 859 (Union). That agreement expressly recognized the Union’s authority as “sole and exclusive” regarding contract negotiation and grievance administration for unit employees. The agreement also provided that those employees retiring with 25 years or more of service were entitled to continued health insurance coverage under the Blue Cross/Blue Shield Blue Million Plan wholly at employer’s expense. Plaintiff retired under the terms of this agreement and continued to receive the Blue Million health insurance coverage.
On February 28, 2000, the Town Board resolved to discontinue the Blue Million Plan and substitute therefor a menu of three Blue Choice plans from which certain individuals, including the plaintiff, could select. The Town wrote to the plaintiff informing him of this change and inquired as to his choice of the new plans offered. Plaintiff elected to take one of the offered Blue Choice plans, and accordingly submitted a new group enrollment form. Approximately one year later, plaintiff wrote the Town protesting that the health plans offered imposed upon the participant certain monthly prescription plan costs ($40 to $80 in plaintiff’s case) in order to access the coverage. Plaintiff argued that this participant cost was contrary to the “no cost to the employee” language in the collective bargaining .agreement under which he retired, which referred to a $2 drug rider as the only employee cost.
Contemporaneously with plaintiffs letter of protest, counsel for the Union wrote the Town Attorney, informing her that the *249 Union regarded the change in plaintiffs health insurance plan from Blue Million to Blue Choice a breach of the collective bargaining agreement under which plaintiff retired. The Town Attorney responded that the Town would not provide “any additional coverage for [plaintiff].” Plaintiff instituted this action, alleging breach of contract, and requesting judgment directing the Town to restore plaintiffs Blue Million Plan, together with an award of money damages equaling the plaintiffs out-of-pocket expenses attributable to his participation in the substituted Blue Choice plan.
The defendant Town moves pursuant to CPLR 3211 for dismissal of the complaint for failure to state a cause of action, based upon the plaintiffs failure to allege a breach of the duty of fair representation by the union responsible for pursuing plaintiffs claim through the contractually established grievance procedure, as well as his failure to allege the timely presentment of a written verified claim under section 65 (3) of the Town Law. The defendant also moves for similar dispositive relief upon the ground that the claim of the plaintiff is barred by the applicable limitations period pertaining to contract claims against a town prescribed in section 65 (3) of the Town Law. Plaintiff opposes dismissal of his complaint on any of these grounds, and cross-moves for leave to file an amended complaint to assert the filing of a verified claim with the Town as well as additional grounds for the relief sought.
Defendant Town argues that special considerations recognized by the courts regarding labor contracts resulting from the collective bargaining process sanctioned under article 14 of the Civil Service Law (commonly referred to as the Taylor Law) require that this action be dismissed. These considerations manifest in rules of law channeling disputes concerning the administration of rights and obligations contained in collective bargaining agreements through contractually established grievance arbitration procedures handled by labor and management representatives. Defendant argues that these rules and the policies that underlie them apply to the facts of this case, propositions disputed by the plaintiff.
These rules exist within the larger context of contract law. As defined in Restatement (Second) of Contracts § 1, “[a] contract is a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty.” Generally, it is the province of the courts to vindicate the law by affording proper relief for failure to abide those promises the law chooses to *250 enforce.[1] The common-law elements of a cause of action for breach of contract are (1) formation of a contract between plaintiff and defendant, (2) performance by plaintiff, (3) defendant’s failure to perform, and (4) resulting damage. (See 2 NY PJI3d 437-438 [2002], citing Furia v Furia, 116 AD2d 694.) Presumptively, therefore, if plaintiff has pleaded a cause of action for breach of contract, such is cognizable by this court.
Under the common-law elements of a cause of action for breach of contract, the complaint would appear sufficient. True, the contract sought to be enforced is not between the plaintiff and the defendant, but between the defendant and the Union of which the plaintiff was a member. However, the Union was lawfully acting in a representative capacity on behalf of the plaintiff and others, and, in any event, the plaintiff would have clear standing under common law as a third-party beneficiary to seek enforcement.[2]
Defendant engages this traditional contract approach by invoking a decisional rule alleged to declaim plaintiffs cause of action at the pleading stage. This rule devolves from the Taylor Law and provides that “when an employer and a union enter into a collective bargaining agreement that creates a grievance procedure, an employee subject to that agreement may not sue the employer directly for breach of contract but must proceed, through the union, in accordance with the contract.” (Matter of Board of Educ., Commack Union Free School Dist. v Ambach, 70 NY2d 501, 508, cert denied sub nom. Margolin v Board of Educ., 485 US 1034; see also Ponticello v County of Suffolk, 225 AD2d 751; Arizaga v New York City Health & Hosps. Corp., 96 AD2d 457.) The rule promotes the statutory policy of the Taylor Law entrusting to a union the sole responsibility to represent employee rights under a collective bargaining agreement, a responsibility that would be undercut by individual employee suits against the employer, disrupting both the negotiation and administration of such agreements (see Matter of Board of Educ., Commack Union Free School Dist. v Ambach, 70 NY2d at 509). It may be said that it is not unfair for *251 employees who reap the benefits of collective bargaining to also accept the restrictions that make that process work.
There are two exceptions to the rule denying individual employees the right to go beyond the grievance procedure and litigate a contract dispute directly with the employer. The first is when the agreement either expressly allows such suits or implicitly does so by excluding the dispute at issue from, or not covering it within, the ambit of the contractual dispute resolution procedures (see Tomlinson v Board of Educ., 223 AD2d 636). The second exception is where the union has breached its duty to fairly represent the employee regarding disputes within the scope of the contractual dispute resolution procedures (see Board of Educ. v Ambach, 70 NY2d at 509). Under the second exception, an employee may sue his employer directly so long as he alleges and ultimately proves such wrongful conduct by his union. Both exceptions make sense. As to the first, there is nothing sacrosanct about grievance arbitration, and if the parties choose not to use it for all or a certain class of contract disputes, there is nothing prohibiting either party or contract beneficiaries from invoking any judicial remedy available for breach of contract. As to the second exception, if a union is not abiding by its responsibility to fairly represent an employee, the contractual grievance procedure does not work. The choice then is to leave the employee without recourse against his employer to remedy a potentially bona fide grievance, or to allow direct suit against the employer notwithstanding that the employer is not at fault for failure of the contractual process it bargained to have in place for dispute resolution. Balancing the relative hardships caused by union failure, the courts have chosen to vindicate the employee’s right to a remedy against his employer.
The issue presented in this case is whether the plaintiff’s status as a retired as opposed to an active employee removes any requirement that his claim be pursued through the contractual grievance arbitration procedures established in the expired 1991-1992 collective bargaining agreement. Analysis starts with the general proposition stated by the Court of Appeals in Matter of Primex Intl. Corp. v Wal-Mart Stores (89 NY2d 594, 598-599) that “a broad arbitration clause in an agreement survives and remains enforceable for the resolution of disputes arising out of that agreement subsequent to * * * the natural expiration of the term of that agreement.” The Court cited as supporting authority Nolde Bros. v Local No. 358, Bakery & Confectionery Workers Union (430 US 243). In *252 that case, the Supreme Court held that the contractual origin of a grievance arbitration procedure “does not require us to hold that termination of a collective-bargaining agreement automatically extinguishes a party’s duty to arbitrate grievances arising under the contract” (id. at 251). The Supreme Court further noted, under the facts of that case, “there is nothing in the arbitration clause that expressly excludes from its operation a dispute which arises under the contract, but which is based on events that occur after its termination” (id. at 253). As such, parties were compelled to arbitrate a dispute involving postemployment entitlements arising from a terminated collective bargaining agreement when the events predicating the dispute arose after contract termination.
The principles oi-Nolde were expressly adopted in City of Buffalo v A.F.S.C.M.E. Council 35, Local 264 (107 AD2d 1049), a Fourth Department case involving the public sector. There a number of employees had retired during the term of a collective bargaining agreement providing for certain postretirement health care benefits. After the agreement expired, the city attempted to increase the retirees’ portion of the cost of those benefits in alleged violation of the agreement. The unions sought arbitration after completion of the grievance procedure, and the city responded by applying for a judicial stay of arbitration. Said the Appellate Division:
“The city contends that, since the retired individuals are not ‘employees’ within the terms of the collective bargaining agreements, the unions may not represent them in the instant dispute. The grievance procedure set forth in the collective bargaining agreements in question may be initiated to settle ‘[a]ny grievance, controversy or dispute which may arise * * * regarding the application, meaning, or interpretation of this agreement’. Such language indicates a broad arbitration clause rendering the issue of the union’s relationship to retired employees a question for arbitration.” (Id. at 1049-1050 [emphasis added].)
Accordingly, the city’s application to stay arbitration was denied. The Fourth Department recently reaffirmed its holding in Matter of Jefferson-Lewis-Hamilton-Herkimer-Oneida BOCES (Jefferson-Lewis-Hamilton-Herkimer-Oneida BOCES Professional Assn., Local 2784) (247 AD2d 829).
The grievance arbitration provisions at issue in the present case are no less broad than those at issue in City of Buffalo v *253 A.F.S.C.M.E. Council (supra). Thus, had the plaintiffs Union in this case initiated the grievance procedures and sought arbitration, the Town could not have secured a judicial stay of arbitration based solely upon the argument that the claims of retirees were not arbitrable. But to say that a union may initiate grievances on behalf of retirees does not perforce mean that it must. The Fourth Department holdings in City of Buffalo and Jefferson BOCES parallel federal labor law in supporting “only the proposition that a union has standing to assert retirees’ rights under a collective bargaining agreement to which it is a party if it chooses and that an employer may not refuse to arbitrate its contractual obligations with the union” (Anderson v Alpha Portland Indus., 752 F2d 1293, 1296 [8th Cir 1985]). It does not necessarily follow “that a union which does bargain for its retirees becomes their exclusive representative and that the retirees then must proceed through the union.” (Id.)
To determine whether retirees must proceed through the union and resolve disputes regarding postemployment benefits through the grievance arbitration procedures provided in the collective bargaining agreement from which those benefits arise, courts must examine the parties’ intent as gleaned from the agreement. It is true, of course, that generally once an individual ceases to be an employee, the union’s statutory duty to fairly represent the individual as a bargaining agent also ceases, and hence the union cannot be said to be that individual’s exclusive representative for that purpose.[3] But a union’s contractual duty to represent a former employee by processing his or her grievance through the contractually established procedures may nevertheless remain. For example, it appears well established that if the events predicating a contract grievance arose at the time an individual was an active employee and thus a member of the bargaining unit, the union retains its duty to represent the former employee, and that employee *254 and the union must resort to the contract procedures for resolution (see Baker v Board of Educ. of W. Irondequoit Cent. School Dist., 70 NY2d 314; Roman v United States Postal Serv., 821 F2d 382). This is not a bargaining function — negotiating a new or different agreement — but one to resolve a dispute under an already bargained agreement in accordance with contractually agreed procedures for resolving those disputes.
There appears to be no appellate authority in New York squarely addressing the issue whether unions have a duty to represent former employees through grievance administration to resolve disputes concerning contractually conferred, postretirement benefits. Two unreported nisi prius court decisions have held flatly that they do not, both persuaded by federal decisional authority involving private sector labor relations law.[4] This court is unpersuaded that New York law — or federal law for that matter — recognizes a per se rule that a union’s duty to pursue contract grievances on behalf of contract beneficiaries automatically terminates when the beneficiaries can no longer be represented by the union for collective bargaining purposes. So too, this court is unpersuaded that New York law augers a per se rule only extending that obligation to contract disputes arising from events occurring during the individual grievant’s active employment. Rather, consistent with extant New York and analogous federal authority, the issue is whether the specific collective bargaining agreement contemplates that the grievance arbitration procedures remain the exclusive means to resolve disputes under the agreement regardless when the events occur and the employment status of those individually aggrieved. If so, then the union’s duty to represent *255 for this purpose remains as a matter of contractual obligation.[5] Thus, what frames and focuses the court’s analysis is the intent of the contracting parties, not the dynamics or extracontractual nature of the shifting relationship between a union and the individuals for whom it negotiated the agreement, except to the extent they are relevant to ascertaining the parties’ intent.
The first and primary inquiry in contract interpretation is the natural import of the language used by the parties. Here the contract at section 2 (b) defines “grievance” to “mean any disputed matter pertaining to conditions of employment, including the meaning, application and interpretation of this Agreement.” This definition broadly encompasses any matter relating to conditions of employment whether or not governed by the contract, as well as any matter pertaining to contract interpretation and application whether or not relating to conditions of employment. Section 6 expressly contemplates that union representatives shall manage the grievance process in terms of presenting grievances and deciding whether to continue with grievances through a multi-step process culminating in binding arbitration. There is no language carving out of the broad definition of grievance or language describing the procedures for resolving a grievance any class of otherwise covered disputes for resolution in different fashion. Nor is there any language conditioning the obligation to follow the grievance arbitration procedure upon the status of any aggrieved individual as an active employee or retiree, or the time when the events predicating the grievance occurred. As such, the collective bargaining agreement here is distinguishable from those cases where the language of the agreement made any of those facts determinative whether the grievance arbitration procedure applied.
*256 In Matter of Odessa-Montour Cent. School Dist. (Odessa-Montour Teachers Assn.) (271 AD2d 931, 932), the Third Department examined the arbitrability of a dispute between a retiree and his former employer regarding the retiree’s entitlement to health insurance coverage under a collective bargaining agreement. The Court noted that the agreement defined grievance as “a claim by any teacher or group of teachers that there is a violation, misinterpretation, or misapplication of this Agreement” (id. [emphasis supplied]). The Court carefully distinguished several cases where the definition of a grievance did not depend upon the status of the aggrieved individuals, but only the existence of a dispute regarding violation, meaning, or application of the agreement (id. at 932-933). Inasmuch as a retiree was no longer a “teacher” for purposes of the agreement, there was no obligation to arbitrate (see also Anderson v Alpha Portland Indus., 752 F2d at 1298 [“the relevant provisions address only grievances of ‘employees’ and spoke only of ‘employees’ initiating the contractual dispute resolution procedures”]; Quick Air Frgt. v Teamsters Local Union No. 413, 613 F Supp 1263 [grievance arbitration procedure limited to disputes between management and an “aggrieved employee,” which did not include disputes with retirees]).
Where disputes concerning retiree benefits are not similarly or otherwise excluded, the grievance arbitration procedures must be followed. As aptly stated in Lucas v Legal Aid Socy. (1989 WL 15778, *2, 1989 US Dist LEXIS 1637, *6-7 [ED NY, Feb. 16, 1989]) and quoted approvingly in Miller v County of Broome (197 AD2d 170, 172):
“Where the source of the right concerned in the dispute is the collective bargaining agreement itself, then the resolution will depend on an interpretation of the agreement, and the agreement’s grievance procedures must be followed * * * In fact, permitting retired employees to circumvent agreed upon grievance procedures could, in effect create a class of ‘preferred claimants’ who, at their convenience, could bypass those provisions created precisely for resolution of the claims they would be raising.”
The court is not unmindful of the practical difference between the status of an active employee and a retiree, and its potential negative impact upon the efficacy of union representation of retirees in grievance arbitration. (See Anderson v Alpha Portland Indus., 727 F2d 177, 183, on reh 752 F2d 1293, *257 1299 n 11 [describing the nature of the “inherent conflicts” of interest between retirees and a union also representing active employees].) Yet this alone has not been held a ground for failure to enforce the bargain made between the union and employer with respect to the scope of exclusive dispute resolution procedures, including binding arbitration. Judicial unction of labor arbitration in the public sector is well established (Matter of Board of Educ. of Watertown City School Dist. [Watertown Educ. Assn.], 93 NY2d 132, 139-140). Parties bargain for a particular type of dispute resolution process culminating with the selection of an arbitrator they trust to have the special competence and experience to decide the disputes in accordance with the special rules applicable to the arbitral forum (see e.g. United Steelworkers of Am. v Enterprise Wheel & Car Corp., 363 US 593, 599). The advantages or disadvantages of arbitration of particular contract disputes are things to be identified and considered by the parties in making their contract, not justification for a court to remake the contract.
In this case, the parties adopted a grievance arbitration procedure broadly applicable to all disputes arising under the collective bargaining agreement relied upon by the plaintiff. The plaintiff has not pleaded facts sufficient to avoid application of this procedure to his dispute with the defendant. This court therefore finds that the dispute regarding plaintiffs contractual entitlement to postemployment health insurance benefits is one commended to resolution in the contractually agreed manner.
Accordingly, the motion of the defendant to dismiss the complaint is granted, without costs.

. Article VI, § 7 (a) of the New York State Constitution confers upon the State Supreme Court “general original jurisdiction in law and equity,” which entails competence “to entertain all causes of action unless its jurisdiction has been specifically proscribed” (Matter of Adam S., 285 AD2d 175, 177).

. It is well settled that “New York follows the nearly universal rule that a third person may, in his own right and name, enforce a promise made for his benefit even though he is a stranger both to the contract and to the consideration” (see 22 NY Jur 2d, Contracts § 302 [1996]).

. See Matter of Aeneas McDonald Police Benevolent Assn. v City of Geneva, 92 NY2d 326, 332 (“a public employer’s statutory duty to bargain does not extend to retirees”); Della Rocco v City of Schenectady, 252 AD2d 82, 84 (“once employees retire, they are no longer represented by the union and would not possess collective bargaining rights on their own”); Myers v City of Schenectady, 244 AD2d 845, 847, lv denied 91 NY2d 812 (“at the expiration of [the collective bargaining agreements under which the retirees obtained the disputed health benefits, the union] no longer represents the retirees, has no bargaining rights or obligations on their behalf and, indeed, may not even have the right to bargain voluntarily on their behalf’).

. (See Della Rocco v City of Schenectady, Sup Ct, Schenectady County, Aug. 28, 1997, Lynch, J., Index No. 90-2518, affd 252 AD2d 82 [3d Dept 1998], lv dismissed 93 NY2d 1000; Myers v City of Schenectady, Sup Ct, Schenectady County, July 19, 1996, Caruso, J., Index No. 94-1449, affd 244 AD2d 845 [3d Dept 1997], lv denied 91 NY2d 812.) The nisi prius courts in Della Rocco and Myers relied solely upon Anderson v Alpha Portland Indus. (752 F2d 1293 [8th Cir 1985], cert denied 471 US 1102) for the proposition that retirees may sue their former employer directly over disputes concerning entitlements under collective bargaining agreements regardless of any grievance arbitration procedures contained in those agreements. The Third Department, in affirming Della Rocco and Myers, did not address in either case whether the union had a duty to pursue these disputes through the grievance arbitration procedures. A review of the records on appeal in both cases shows that the issue was raised in the City’s responsive pleadings, and briefed on appeal in Myers, but not briefed in Della Rocco. Thus, it could be argued that the Third Department implicitly endorsed the lower courts’ holdings on this threshold issue by reaching the merits of the underlying controversies.

. The Supreme Court has recognized a distinction between the statutory duty and a contractual duty of fair representation (see Schneider Moving & Stor. Co. v Robbins, 466 US 364, 376). Thus, to say that a union does not have a statutory duty to bargain on behalf of retirees does not resolve the issue whether it has an independent contractual duty to act on behalf of retirees pursuant to the grievance arbitration procedures contained in the relevant collective bargaining agreement. In Anderson v Alpha Portland Indus. (752 F2d 1293 [8th Cir 1985]), relied upon by the lower courts in Della Rocco and Myers (supra n 4), the Eighth Circuit discussed Robbins at length, and concluded that there was no contractual duty to grieve and arbitrate retiree disputes based upon the express language of the agreement at issue. The court did not hold that such a duty could never be found regardless of the language of the agreement or the intent of the parties.