**HUSTLERS, INC., a Georgia corporation, Plaintiff,**

v.

**Hugh THOMASSON, individually and as an officer of Justice Writers Publishing, Inc., a Florida corporation, et al., Defendants.**

**Civil Action No. 1:01–CV–3026–TWT.**

United States District Court, N.D. Georgia, Atlanta Division.

March 12, 2004.

Joseph M. Beck, Kilpatrick Stockton, Marva Jones Brooks, Kristin Rigby Connor, Stephen Melvin Dorvee, Arnall, Golden & Gregory, Atlanta, GA, James H. Harris, III, Gordon, Martin, Jones & Harris, Nashville, TN, for Defendants.

Terry Dale Jackson, Office of Terry D. Jackson, Atlanta, GA, Philip Michael Walden, Jr., Jones & Walden, Atlanta, GA, for Plaintiff.

### ORDER

THRASH, District Judge.

The Plaintiff brought this action in November 2001 for violations of the Copyright Act (17 U.S.C. § 101 *et seq.*), the Lanham Act (15 U.S.C. § 1125), and various state law claims. In their answer, the Defendants asserted state law counterclaims against the Plaintiff. The case is currently before this Court on cross motions for partial summary judgment. For the reasons set forth below, the Defendants/Counterclaim Plaintiffs' Motion for Partial Summary Judgment [Doc. 64] is GRANTED IN PART AND DENIED IN PART, and the Counterclaim Defendants' Motion for Partial Summary Judgment [Doc. 65] is DENIED.

### I. BACKGROUND

The Plaintiff Hustlers, Inc. ("Hustlers") is a Georgia corporation engaged in the music industry as a music publisher. The Plaintiff acquires and then licenses copyrights on musical compositions. The Defendant Hugh Thomasson is a resident of Florida. He is a song writer and a recording artist. The Defendant Justice Writers Publishing, Inc. ("Justice Writers") is a Florida corporation engaged in the music industry as a music publisher. Justice Writers was formed by Thomasson and his wife, Mary Thomasson in March of 1999. Counterclaim Defendant Outlaws Productions, Inc. ("Outlaws Productions") is a Georgia corporation with its principal place of business in Macon, Georgia. Outlaws Productions was started for the purpose of promoting the works of "The Outlaws," a band of which Thomasson was once a member. Counterclaim Defendant Alan Walden is a resident of the state of Georgia. Walden is the principal owner of both Hustlers and Outlaws Productions.

The relationship between Thomasson and Hustlers began in 1974 when they executed the first in a series of music publishing agreements. (Walden Dep., Ex. 1.) Through additional written agreements, the relationship between Hustlers and Thomasson continued through June 1999. (Walden Dep., Exs. 2–6.) Pursuant to those agreements, Thomasson conveyed to Hustlers the rights (including copyrights) to all songs he authored or co-authored during the contractual period. In return, Hustlers was to account for and pay to Thomasson a portion of the royalties for the duration of the copyrights. (*Id.*)

In addition to the agreements with Hustlers, Thomasson also entered into an agreement with Outlaws Productions, both as an individual and as a member of The Outlaws. The agreement gave Outlaws Productions the exclusive services of The Outlaws as recording artists, and empowered Outlaws Productions to enter into recording agreements for the band with a record label. (Def.'s Ex. D.) In return, Outlaws Productions was to collect royalties from record labels and timely pay portions of them to the members of The Outlaws. (*Id.*)

In March 1999, more than two months before his agreement with Hustlers expired, Thomasson sent a letter to Sanctuary, a record company which licensed some of Thomasson's songs. The letter notified Sanctuary that "Hugh E. Thomasson's Publishing Company has been changed to ..." Justice Writers. (Def.'s Reply Ex.

A.) The letter further provided that "[t]his is to become effective immediately, which will begin with the current project and all future endeavors." (*Id.*) After receiving that letter, Sanctuary began sending royalties on all of Thomasson's songs to Justice Writers instead of Hustlers. Hustlers was unaware that this was happening until February 2000, at which point Hustlers and Outlaws Productions both stopped making royalty payments to Thomasson. This lawsuit, filed by Hustlers, followed.

## II. *SUMMARY JUDGMENT STANDARD*

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the non movant. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party seeking summary judgement must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. *DISCUSSION*

The Defendants move for summary judgment on the Plaintiff's claims of copyright infringement, violation of the Lanham Act, breach of contract, quan-

tum meruit, unjust enrichment, promissory estoppel and fraud, and also on their counterclaims for breach of contract, rescission of contract and reversion of copyrights. The Plaintiff and the other counterclaim Defendants move for summary judgment on all of the claims asserted against them. The issues are discussed separately below.

### A. *Breach of Contract*

Both sides to this litigation claim that the other violated their publishing agreements. Hustlers contends that Thomasson breached the publishing agreements between them by redirecting royalty payments to Justice Writers. Thomasson contends that Hustlers breached the publishing agreement by not forwarding royalties owed to him under the terms of their agreement. Thomasson also contends that Outlaw Productions breached the recording agreement by not paying royalties.

#### 1. *Hustlers' Claim for Breach of Contract*

■ The agreements between Hustlers and Thomasson provide that they are to be construed according to the laws of the state of New York. In New York, to state an action for breach of contract, one must show: (1) formation of a contract; (2) performance by one party; (3) failure to perform by the other party; and (4) resulting damage. *Ledain v. Town of Ontario,* 192 Misc.2d 247, 746 N.Y.S.2d 760, 763 (2002). There is no dispute that a contract existed between Hustlers and Thomasson; however, the parties disagree with respect to the issues of performance.

Hustlers contends that it properly performed its duties under the contract to market Thomasson's songs, collect royalties thereon, account to Thomasson for the

royalties his compositions earned, and (at least through May 2000) pay to Thomasson his portion of the royalties on his works. According to Hustlers, it was Thomasson that first failed to perform duties of the contract, by sending a letter to a record company directing future royalty payments to be made to his new publisher, Justice Writers. The letter does not direct the record company to send all royalty payments to Justice Writers; but rather, states that Thomasson's publishing company has been changed to Justice Writers, "effective immediately, which will begin with the current project and all future endeavors." (Def.'s Reply. Ex. A.) According to its text, the letter applies to the "current project" and those which follow-it says nothing about changing royalty payments for songs authored by Thomasson in the past. (*Id.*) The fact that the record company may have misunderstood the letter and sent royalty payments to the wrong place has no bearing on whether Thomasson, who sent the letter, breached his agreement with Hustlers. To present a claim for breach of contract based on Thomasson's letter, Hustlers must produce evidence that directing payments for "the current project and all future endeavors" to Justice Writers violates Thomasson's agreement with Hustlers.

The "current project" referred to in Thomasson's letter was the "Edge of Forever" album he was working on for Lynyrd Skynyrd. Although Thomasson's songs on that album were written within the contractual period during which the copyrights on his songs were assigned to Hustlers, Thomasson claims Hugh Walden waived Hustlers' rights in those songs, permitting Thomasson to assign them to Justice Writers. (M. Thomasson Aff. ¶ 4; Brusco Aff. ¶ 3.) Hustlers and Walden assert that there was no such waiver, and

that the copyrights to the songs on the Edge of Forever album belonged to Hustlers pursuant to the parties' agreements. (Walden Dep. at 98.)

■ Walden acknowledged in his deposition that, when asked, he did not claim rights in the songs written by Thomasson for the "Edge of Forever" project. (Walden Dep. at 99–100.) Thomasson contends that such amounts to a waiver of any interest Walden and Hustlers had in those works. But, to be effective, Walden's waiver must have been made with knowledge of the existence of his rights in the songs, and with the intent to waive those rights. *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir.2001); *Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*, 55 U.S.P.Q.2d 1680 (S.D.N.Y.2000). Unless Walden's waiver was knowing and intentional, it was not effective to waive Hustlers' rights in songs authored before the end of its agreement with Thomasson.

■ The party asserting there was a waiver has the burden to come forward with evidence to prove it. *Horne v. Radiological Health Services, P.C.*, 83 Misc.2d 446, 455, 371 N.Y.S.2d 948 (N.Y.Sup.1975). While there is evidence that Walden did not believe he had rights in Thomasson's "Edge of Forever" songs, there is no evidence in this case that Walden made this putative waiver with knowledge of the existence of his rights. Rather, the evidence produced suggests that Walden did not know whether he had rights in the compositions at issue when asked about them. (Walden Dep. at 99–100.) Walden testified he had no knowledge of the songs and did not want to assert a claim to them in his ignorance of their history. (*Id.*) Viewing the evidence in the light most favorable to

the nonmovant, there is a genuine issue of fact as to whether Walden effectively waived Hustlers' interest in the subject works. Without a waiver, Thomasson could not rightfully claim the "Edge of Forever" compositions for Justice Writers. Accordingly, Thomasson is not entitled to summary judgment on Hustlers' claim for breach of contract.

### 2. Thomasson's Claims for Breach of Contract Against Hustlers

Both sides moved for summary judgment on Thomasson's claim that Hustlers breached their agreement when it failed to pay Thomasson royalties earned under the terms of the publishing contract. According to Thomasson, even if he did breach their agreement by redirecting royalties to Justice Writers, Hustlers cannot resort to the self help measure of withholding funds owed to him. This is improper, Thomasson argues, because New York law requires a party which suffered a breach to choose between affirming the contract and suing for damages, or terminating the agreement with a right to recover liquidated damages. *ESPN, Inc. v. Office of the Com'r of Baseball*, 76 F.Supp.2d 383, 387 (S.D.N.Y.1999). New York law, however, also recognizes the defense of equitable recoupment which may be appropriate in this case. *Bendat v. Premier Broadcast Group, Inc.*, 175 A.D.2d 536, 538–39, 572 N.Y.S.2d 796 (1991); *see also National Cash Register Co. v. Joseph*, 299 N.Y. 200, 203, 86 N.E.2d 561 (1949).

As to most of Thomasson's claims, Hustlers asserts that they are time barred by the applicable statute of limitations and by the contract's one year contestability provision. Hustlers put forward evidence showing that many of Thomasson's claims fall outside of the six year statute of limita-

tions for bringing a contract action, and others are subject to the provision in the contract whereby Thomasson had to raise all disputes within one year of receiving an accounting from Hustlers. (Pl.'s Ex. C–E, ¶ 5.) In response, Thomasson rests on his claims against Hustlers arising out of the failure to pay him royalties starting in May of 2000. For those claims, Thomasson presented evidence showing he complied with the six year statute of limitations as well as the contract's one year contestability provision. (M. Thomasson 2nd Aff. ¶ 3–4; Def.'s Response Ex. B.) Thomasson failed to address the timeliness of any putative breach by Hustlers prior to May 2000. Viewing the evidence in the light most favorable to Thomasson, he did not satisfy his response burden with respect to his claims of breach against Hustlers arising before May 2000, and they are, therefore, barred as untimely. However, Thomasson did meet his response burden for claims arising out of Hustlers' failure to pay him royalties starting in May 2000, and those claims survive Hustlers' timeliness argument.

Hustlers does not deny that Thomasson earned royalties that were due starting in early 2000 pursuant to their agreement; however, Hustlers contends that it is entitled to withhold Thomasson's royalties under a theory of recoupment. New York law authorizes equitable recoupment, whereby a party with a legally subsisting cause of action arising out of the same contract or transaction that gave rise to the complaint may withhold funds otherwise owed pending the resolution of a dispute. *Bendat v. Premier Broadcast Group, Inc.*, 175 A.D.2d 536, 538–39, 572 N.Y.S.2d 796 (1991); *see also National Cash Register Co. v. Joseph*, 299 N.Y. 200, 203, 86 N.E.2d 561 (1949). Hustlers as-

serts that its legally subsisting claim arises from Thomasson's wrongful redirection of royalties to Justice Writers.

■ Although Hustlers may be entitled to equitable recoupment, this does not alter the fact that failure to pay royalties is a breach of the publishing agreement which authorizes Thomasson to rescind or terminate the agreement. New York Law provides that:

> [R]escission of a contract is an extraordinary remedy which should not be granted whenever there is only an inconsequential breach of the contract. Rather, before rescission will be permitted the breach must be found to be "material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract."

*Nolan v. Sam Fox Pub. Co., Inc.,* 499 F.2d 1394, 1397 (2nd Cir.1974). Rescission is authorized when a copyright holder completely withholds royalty payments because this defeats an essential objective of the contract. *Id.* at 1399. Here, there has been a complete and willful withholding of royalty payments. This entitles Thomasson to damages and rescission of the contract. The amount of damages will be determined at trial.

### 3. *Thomasson's Claim for Breach of Contract Against Outlaws Productions*

■ Thomasson contends that Outlaws Productions breached its contract with him by withholding funds he earned under their agreement pending the outcome of this dispute. Once again, both sides moved for summary judgment. Outlaws Productions contends that Thomasson agreed to permit it to recoup funds from

him as needed as one of Hustlers' "associated, affiliated and subsidiary corporations." (Thomasson Dep. Ex. 1 at ¶ 4(I).) The provision upon which Outlaws Productions bases its position appears in the contracts between Hustlers and Thomasson. (*Id.*) That provision, however, is as an acknowledgment of an advance, and is limited to the recoupment of the funds advanced in consideration of Thomasson's execution of the agreement. The provision is unambiguous; it does not authorize Outlaws Productions to recoup funds on behalf of Hustlers outside of the specifically mentioned advance. (*Id.*) Moreover, Outlaws Productions has no claim to equitable recoupment, because there is no evidence in this case upon which it can base a claim arising out of the same contract or transaction which initiated the complaint. Viewing the facts in the light most favorable to Outlaws Productions, no reasonable jury could conclude that it had a right to withhold the funds owed to Thomasson under the parties' agreement. In addition, Thomasson is entitled to rescind the contract for the same reason as stated above. Accordingly Thomasson is entitled to summary judgment with respect to his counterclaim for breach of contract against Outlaws Productions. The amount of damages will be determined at trial.

### B. *Copyright Infringement*

■ Thomasson moves for summary judgment on Hustlers' claims of copyright infringement. Citing a decision from the Southern District of New York, Thomasson contends that when, as in this case, the resolution of the contract dispute necessarily resolves the copyright issues as well, the copyright issues are merely incidental to the state law contract claim and there is no jurisdiction under the Copyright Act. *See Living Music Records, Inc.*

*v. Moss Music Group,* 827 F.Supp. 974, 980 (S.D.N.Y.1993). Assuming, without deciding, that all of the copyright issues in this case will be resolved by the determination of the contract dispute between the parties, there is still subject matter jurisdiction because this case falls within the Eleventh Circuit's test for Copyright Act jurisdiction. In *MCA Television Ltd. v. Public Interest Corp.,* 171 F.3d 1265 (11th Cir.1999), the Eleventh Circuit rejected the argument that there is no copyright claim in a case where copyright issues are incidental to the resolution of the contract dispute before the court. *Id.* at 1269. In that case, Public Interest Corporation stipulated that MCA owned the copyrights in the television programs at issue, and contended that accordingly, there was nothing left to resolve but the contract issues. In rejecting that argument, the Court of Appeals stated that "an action arises under the Copyright Act where the complaint is for a remedy expressly granted by the Act, e.g., a suit for infringement." *Id.* at 1270 (internal quotations omitted). Here, Hustlers' complaint seeks an injunction and damages pursuant to the Copyright Act. (Complaint, Doc. 1, at 13–17.) In the Eleventh Circuit, this is enough for a suit to arise under the Copyright Act, whether or not the issues will be determined by the application of state contract law. *MCA Television,* 171 F.3d at 1270. Accordingly, Thomasson is not entitled to summary judgment on Hustlers' claims for copyright infringement.

### C. *Lanham Act Claims*

 Hustlers' Lanham Act claims stem from its contention that Thomasson's actions led a record company to list Justice Writers as the publisher for songs when Hustlers actually owned the copyrights. Thomasson argues he is entitled to sum-mary judgment on Hustlers' Lanham Act claims because there is no evidence of a likelihood of confusion. As support for his summary judgment argument, Thomasson relies upon the deposition of a music industry executive who says he personally does not pay attention to the publisher of a composition, believes that there are often mistakes in liner notes with respect to the publisher of songs, and that such mistakes can usually be resolved by an apology. (Lipsky Dep. at 126–27.) Thomasson contends that this, combined with the fact that there is no evidence of actual confusion, entitles him to summary judgment on Hustlers' Lanham Act claims. Taking the facts in the light most favorable to the nonmovant, there is some evidence Thomasson instructed his new record company to list Justice Writers as the publisher of material in which it had no interest. The lack of actual confusion and the deposition testimony of a music industry executive are not sufficient to warrant summary judgment on the grounds that there is no likelihood of consumer confusion. *John H. Harland Co. v. Clarke Checks, Inc.,* 711 F.2d 966, 978 (11th Cir.1983) (actual confusion not required for Lanham Act claim). The purpose of the Lanham Act is to ensure that the public is not likely to be confused by a false designation of origin, in this case of musical compositions. The alleged false designation in this case was distributed to every consumer purchasing the "Edge of Forever" album. This Court cannot say on summary judgment that a reasonable jury could not conclude that consumers are likely to be confused by such a misrepresentation. Summary judgment on Hustlers' Lanham Act claims is not proper.

### D. *Quantum Meruit, Unjust Enrichment, and Promissory Estoppel*

 Thomasson argues he is entitled to summary judgment with respect to

Hustlers' claims for quantum meruit, unjust enrichment and promissory estoppel because Hustlers has not come to this Court with clean hands. Thomasson argues that Hustlers' actions in withholding funds was wrongful and injured him, and that Hustlers failed to account to him for those funds. However, viewing the facts in the light most favorable to the nonmovant, this Court has already determined that Hustlers may have been entitled to withhold funds from Thomasson under a theory of equitable recoupment. Assuming for the purpose of this motion that Hustlers was entitled to withhold funds from Thomasson, doing so would not bar Hustlers from seeking equitable remedies. Accordingly, Thomasson is not entitled to summary judgment on Hustlers' equity claims due to unclean hands.

### E. *Fraud*

Thomasson contends he is entitled to summary judgment on Hustlers' fraud claim. To support a claim for fraud, Hustlers must present evidence of a false representation by Thomasson upon which Hustlers relied to its detriment. *Rodgers v. Roulette Records, Inc.*, 677 F.Supp. 731, 738 (S.D.N.Y.1988). Hustlers claims that Thomasson entered into the 1993 publishing agreement with the intent not to perform, but it presented no evidence to support this claim. Rather, the evidence shows a long relationship between the parties, and then, some three months before the final agreement was to expire, a genuine dispute over whether Hustlers waived its interest in some of Thomasson's songs. There is no evidence of a false representation upon which Hustlers relied to its detriment. Viewing the evidence in the light most favorable to Hustlers, there are no facts on the record from which any reasonable jury could conclude Thomasson committed fraud, and Thomasson is entitled to summary judgment as to this claim.

## IV. *CONCLUSION*

For the reasons set forth above, the Defendants/Counterclaim Plaintiffs' Motion for Partial Summary Judgment [Doc. 64] is GRANTED IN PART AND DENIED IN PART. The Counterclaim Defendants' Motion for Partial Summary Judgment [Doc. 65] is DENIED.

SO ORDERED, this 12th day of March, 2004.