*816 OPINION OF THE COURT
Jonathan Lippman, J.
Factual Background
On or about September 5, 1984, petitioner, Patrick Dorme, Jr., commenced employment as a police officer for respondent, Village of Pelham, New York. He was employed as such until he retired due to disability effective December 21, 1990.
Sometime in 1990, the Village entered into a collective bargaining agreement (the CBA) with the Pelham Police Association* (Slingerland affidavit, exhibit A). Petitioner was a member of the team of the Village’s Police Benevolent Association (the PBA) which negotiated the CBA (petitioner affidavit 1Í2).
Article 9 of the CBA provides as follows:
“1. The Village will pay the full cost of the MEBCO Plan, which includes Major Medical. Additional benefits purchased heretofore by some of the employees may be retained on a payroll deduction basis.
“2. The benefits above shall be continued by the Village for currently retired employees and for employees hired before June 1, 1976 when they retire. The Village will pay for one-half the costs of the above benefits after retirement for all employees hired after June 1976. The Village shall pay one quarter of the costs of the above benefits after retirement for all employees hired after December 1, 1985” (id.).
In his petition, petitioner alleges that at the time of his retirement, the then Village Administrator represented to him that the Village would “without condition prospectively pay the full premium for Petitioner’s family health insurance” (verified petition 1i 5).
Petitioner further asserts that
“in good faith reliance upon the representation of *817 the said Village Administrator Petitioner retired and, having been assured continued family health benefits at Village expense: a) did not secure any new employment by reason of which he could have otherwise been entitled to family health benefits at an otherwise employer’s expense; and b) did not secure any alternative family health benefits” (verified petition 11 6).
In an affidavit submitted in opposition to petitioner’s application, William F. Williams, who served as Village Administrator from 1984 to 1991, states that he does not recall telling petitioner or notifying him that the Village would contribute 100% toward the cost of his health insurance in retirement (Williams affidavit 1ÍH 3, 4). Further, Mr. Williams asserts that he does not “recall that Petitioner’s entitlement to health insurance benefits in retirement was governed by anything other than the terms of the collective bargaining agreement in effect at the time of Petitioner’s disability retirement” (Williams affidavit 1i 6).
However, the Village did pay the full cost of petitioner’s family medical benefits for 15 consecutive years, from 1991 through 2005, and the cost was included in the amounts annually budgeted by the Village’s Board of Trustees for all of its employees and retirees.
The current Village Administrator, respondent Richard Slingerland, claims that such payments were mistakenly made and that the Village’s error was only discovered in October 2005 when the Board of Trustees of the Village requested that he review the contribution rates paid by all Village active and retired employees, including police officers, toward the cost of their health insurance coverage (Slingerland affidavit 1i 8).
By letter dated October 4, 2005, Slingerland advised petitioner as follows: “Upon reviewing our records, it has come to the Village’s attention you have not been making the mandatory contribution towards your health benefits, as required in the collective bargaining agreement in effect at the time of your retirement on December 21, 1990” (verified petition, exhibit 1).
Slingerland also demanded in his October 2005 letter that petitioner begin making payment of one half of the cost in 2005 for petitioner’s family medical premiums in the sum of $506.84 per month ($6,082.08 annually) and reimburse the Village for one half of the cost of the annual family medical premiums previously paid by the Village on his behalf since 1991 in the total sum of $52,402.68 (id.).
*818 By letter dated January 10, 2006 to petitioner, Slingerland stated as follows:
“To follow up on our conversation, I reviewed minutes of the Board of Trustees, memos in your personnel file and discussed your situation with other Village of Pelham officials. There is no record that you were ever granted full benefits on your retirement by the Village of Pelham, and therefore the contract in effect at the time of your retirement applies to your case” (verified petition, exhibit 2).
On or about January 20, 2006, petitioner commenced this proceeding by notice of petition, made returnable February 28, 2006, seeking a judgment and order,
“annulling as arbitrary, capricious and otherwise unlawful an October 4, 2005, final administrative determination of Respondents: a) requiring Petitioner to commence making ‘mandatory contribution’ towards health benefits provided to him for years by the Village of Pelham without his ever previously having made and/or been required to make any such contribution; b) requiring petitioner to commence paying effective immediately one-half of the monthly family medical insurance premium at the rate of $506.84 monthly which for the past fifteen years has been paid in full by the Village; c) requiring Petitioner to forthwith pay to the Village for claimed premium costs attributable to 2005 family medical benefits the sum of $6,082.08; and inter alia d) directing Petitioner to pay to the Village fifty percent of his family health care premiums retroactive for the period December 1990 to the present, a sum of $52,402.68” (verified petition 11111-2).
Petitioner asserts eight causes of action in the petition. In the first cause of action, he alleges that the Village’s determination to seek reimbursement from petitioner of half of the cost of the premiums previously paid and to be paid for petitioner’s family health benefits is arbitrary, capricious, otherwise unlawful, and an abuse of discretion (verified petition 1115). In the second cause of action, he asserts that the Village has ratified the oral representation of its former Village Administrator “to the effect that the Village would make full payment of the premiums” (verified petition 1118). In the third cause of action, he asserts that, after he retired, the Village proposed that he agree to a change in insurance carriers in exchange for payment of a por *819 tion of the otherwise unexpended premium amounts, that the Village did pay him such sums, and as a result thereof, the Village’s obligation to pay health premiums was ratified (verified petition 1Í 22). In the fourth cause of action, he contends that the Village is barred by estoppel from implementing its determination (verified petition 1Í 24). In the fifth cause of action, he asserts that respondent Slingerland was without authority to administratively supercede “that established legislative course of conduct and/or contract” between petitioner and the Village (verified petition 11 26). In the sixth cause of action, he asserts that the incumbent Village Board of Trustees is without authority to terminate petitioner’s “long-term contractual entitlement” to full payment of his family health benefits (verified petition H 28). In the seventh cause of action, petitioner claims that respondents’ demand for retroactive reimbursement is time-barred in whole and/or in part” (verified petition 11 30). Lastly, as for his eighth cause of action, petitioner alleges that since he will be obligated to pay under protest the moneys necessary to keep his family health insurance in effect “due to respondents’ threat to terminate same,” he will be entitled to retroactive reimbursement for any such sums (verified petition 1111 32-33).
On February 21, 2006, respondents served a verified answer and “cross-claim” to the petition in which they seek reimbursement of half of the amounts previously paid by the Village on petitioner’s behalf since 1991 for family health insurance premiums.
Legal Discussion
As a threshold procedural issue, the court must address petitioner’s contention in his reply papers that this court lacks jurisdiction over respondents’ counterclaim denominated as a “cross-claim” and should reject the answering papers as untimely (Lovett affirmation 11 5). Since the notice of petition contained a demand pursuant to CPLR 2214 (b) that answering papers were to be served no less than seven days prior to the return date, respondents’ service by overnight mail on February 21, 2006 of its verified answer and counterclaim was one day late (see CPLR 2103 [b] [6]).
However, the court may exercise its discretion and direct that respondents’ papers be read in opposition to the motion (CPLR 2214 [c]). Petitioner does not allege that there was inadequate time to respond to respondents’ papers or that petitioner was *820 prejudiced by the delay in answering. Had petitioner needed an extra day to submit reply papers, he was free to request an extension. As respondents’ delay was minimal and does not appear to be deliberate, this court will consider respondents’ answering papers.
In the first affirmative defense set forth in their answer, respondents contend that “petitioner’s claims arise in whole or in part from an alleged breach of a collective bargaining agreement with respect to which the petitioner did not file or attempt to file a grievance and, therefore, he failed to exhaust his administrative remedies” (verified answer 11 34).
Article 14 of the CBA, entitled “Grievance Procedure and Arbitration,” provides as follows:
“1. Any employee has the right to and may talk to the Chief of Police about any question or problem which may arise. If a difference arises concerning the interpretation or application of the terms of this agreement, it shall be processed in accordance with the following procedure.
“Step 1: A grievance of an employee or employees shall be presented by the Chief Committeeman to the Chief of Police for resolution. If the grievance is not settled within five (5) working business days after presentation, it must be taken to the second step or it will be considered resolved.
“Step 2: In the event such grievance is not resolved at the first step, it shall then be presented, in writing to the Police Liaison for joint resolution with the Mayor. In the event the Mayor is the police liaison, the grievance shall be presented to the Deputy Mayor for joint resolution with the Mayor. If the grievance is not settled within ten (10) business days of presentation to the Mayor and the Police Liaison, it must be taken to the third step or it will be considered resolved.
“Step 3: In the event such grievance is not resolved at the second step it shall then be presented to the Board of Trustees. If the grievance is not settled within fifteen (15) business days of presentation to the Board of Trustees, it may be submitted by either party to arbitration, or it shall be considered resolved.
“2. Should any difference arise between the Village and the Committee and/or Employees concerning *821 the meaning, application, or interpretation of this Agreement, which remains unresolved after presentation to, and processing through the grievance procedure, either the Village or the committee may submit such difference to arbitration by serving notice on the other within ten (10) business days following completion of the third step of the grievance procedure” (Slingerland affidavit, exhibit A).
Admittedly, petitioner did not pursue his claims through the “three-step” grievance procedure prescribed by the CBA. Nevertheless, petitioner argues that “since, in 2005, there was no available administrative remedy for petitioner to exhaust, the court has jurisdiction” (reply mem, point II, at 14). The essence of petitioner’s argument is that petitioner was not obligated to pursue his claims through the grievance procedure set forth in the CBA because there is no real dispute as to contract terms (reply mem at 14). In this regard, petitioner argues that the Village’s conduct during the past 15 years in paying in full for the cost of petitioner’s family health benefits manifests the Village’s “clear understanding” that petitioner was entitled to receive such benefits (reply mem at 16). Further, petitioner contends that respondents have not submitted competent proof controverting petitioner’s affidavit wherein he submits that he has personal knowledge as a member of the PBA team which negotiated the CBA that the CBA was “never intended by either the PBA or the Village to apply to Police Officers who by reason of job injury received disability retirement” (petitioner affidavit 1i 3). Thus, petitioner avers that the “provision in the long-ago expired collective bargaining agreement was simply inapplicable to a disabled retired Police Officer” (reply mem at 16).
Notably, petitioner does not claim that the CBA in its entirety does not apply to him or that he was not a member of the bargaining unit represented by the PBA for whose benefit the CBA was negotiated. Rather, petitioner simply submits that a more favorable and separate agreement with respect to the payment of family health benefits for disabled retirees was negotiated with the Village (petitioner affidavit H 3).
Petitioner’s circuitous argument seeks to circumvent the grievance procedure established in the CBA. Generally, “when an employer and a union enter into a collective bargaining agreement that creates a grievance procedure, an employee subject to that agreement may not sue the employer directly for *822 breach of contract but must proceed, through the union, in accordance with the contract” (Matter of Board of Educ., Commack Union Free School Dist. v Ambach, 70 NY2d 501, 508 [1987], cert denied sub nom. Margolin v Board of Educ., 485 US 1034 [1988]).
While an employee may proceed outside the grievance procedure when the agreement expressly so provides (see Tomlinson v Board of Educ. of Lakeland Cent. School Dist. of Shrub Oak, 223 AD2d 636 [1996], lv denied 88 NY2d 808 [1996]), the CBA in the case at bar did not give petitioner or other retired disabled officers similarly situated this right. Since the CBA did not carve out an exception based on the status of the individuals aggrieved as active, or retired, or disabled retired, the grievance procedure is the proper means to address the parties’ dispute (see Ledain v Town of Ontario, 192 Misc 2d 247 [2002]). Moreover, the CBA does not except disputes involving the provision of health benefits to retired disabled police officers from the grievance procedure. Rather, the CBA broadly defines a dispute subject to the grievance procedure as a difference “concerning the interpretation or application of the terms of this agreement” (Slingerland affidavit, exhibit A).
Indeed, while petitioner has not been employed by the Village for more than 15 years, his status as a retired employee does not excuse his failure to utilize the grievance process set forth in the CBA (see City of Buffalo v A.F.S.C.M.E. Council 35, Local 264, 107 AD2d 1049 [1985]; Matter of Jefferson-Lewis-Hamilton-Herkimer-Oneida BOCES [Jefferson-Lewis-Hamilton-Herkimer-Oneida BOCES Professional Assn., Local 2784], 247 AD2d 829 [1998]). Petitioner’s claims accrued while he was still an employee and a member of the bargaining unit. Nor does his status as a disabled retired police officer exempt him from the obligation of presenting his claims through the proper grievance procedure (see Matter of O’Connor v Police Commn. of Town of Clarkstown, 301 AD2d 654 [2003]).
Therefore, petitioner is required to exhaust his administrative remedies through the grievance procedure established in the CBA prior to initiating judicial review of his claims. Respondents’ counterclaim may be addressed in the context of the grievance procedure and the arbitration, if any, which may ensue thereafter.
*823 In light of this determination, it is unnecessary for this court to reach the substantive merits of the proceeding. Wherefore, it is hereby ordered and adjudged that the petition and counterclaim are hereby dismissed.

 While the cover page to the CBA indicates that it is an agreement between the Village of Pelham and the Pelham Police Association for the period December 1, 1989 through November 30, 1991, article 20 of the CBA entitled “Duration” states that the agreement “shall be effective December 1, 1990 and shall continue through November 30, 1991.” The signature page is undated and there is no notary page. Petitioner has not disputed respondents’ assertion that the CBA was in effect as of December 21, 1990.